# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5994 | **DATE** | 4/3/2003 |
| **CASE TITLE** | Heartstation, Inc. vs. J.L. Industries, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendant Data Metalcraft's motion to dismiss [5-1] the complaint is hereby granted pursuant to Fed.R.Civ.P. 12(b)(6). Data Metalcraft is dismissed as a defendant in this lawsuit.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 0 7 2003 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | 23 |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HEARTSTATION, INC.,
an Illinois Corporation,

        Plaintiff,

        v.

J.L. INDUSTRIES, INC.,
a Minnesota Corporation; POTTER-ROEMER
a California Corporation; and
DATA METALCRAFT, INC.,
a Minnesota Corporation,

        Defendants.

No. 02 C 5994
Judge Ronald A. Guzman

DOCKETED
APR 0 7 2003

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Data Metalcraft, Inc.'s motion to dismiss this lawsuit for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). For the reasons set forth below, the motion to dismiss for lack of personal jurisdiction is granted. Because the Court grants Defendant's motion to dismiss for lack of personal jurisdiction, it need not address the issue of improper venue.

## BACKGROUND FACTS

Plaintiff Heartstation, Inc., ("Heartstation") is an Illinois corporation with assigned rights to U.S. Patent No. 6,301,501 ('501 patent), entitled "Protective Defibrillator Storage Device with

Alarm Signal." (Compl. at 2). Heartstation has brought a patent infringement suit against J.L. Industries, Inc., a Minnesota corporation, Potter-Roemer, a California corporation, and Data Metalcraft, Inc., ("Data Metalcraft"), a Minnesota corporation, for allegedly infringing its '501 patent. Data Metalcraft is a contract precision sheet metal fabricator of housings and other components, and it primarily serves as an original equipment manufacturer ("OEM") that supplies products made to their customer's unique specifications. (O'Brien Aff. at 1). Data Metalcraft currently is an OEM supplier of external defibrillator housing devices for storing automatic external defibrillator devices. (O'Brien Aff. at 2).

In support of its motion to dismiss, Data Metalcraft submitted a sworn affidavit from its president, Gene G. O'Brien. In the affidavit, O'Brien asserts that Data Metalcraft has a single office in Chaska, Minnesota with forty-seven employees. He further attests to the following: Data Metalcraft has not directed, engaged in, or conducted business in the State of Illinois; Data Metalcraft does not market, advertise, or sell its own product line; Data Metalcraft does not own or lease property in Illinois, or maintain employees or agents, or solicit sales of any of its products in Illinois, including the allegedly infringing devices; Data Metalcraft does not direct commercial or advertising activities at Illinois; Data Metalcraft serves primarily as a supplier of parts to other manufacturers, who then incorporate and utilize the parts in manufacturing and selling their own products; Data Metalcraft directs roughly 88% of its sales of the allegedly infringing devices to a local Minnesota corporation, with the remaining 12% of sales made to companies in Florida, New York, Ohio, Massachusetts, California, Missouri, and Oregon; none of Data Metalcraft's sales or advertising are directed at Illinois; Data Metalcraft does not own or maintain an Internet website for any purpose, advertise at trade shows, advertise in industry trade

2

publications, send out national mass-mailings, or negotiate into licensing agreements with any Illinois companies (O'Brien Aff. at 2-4).

Plaintiff Heartstation, in its Response to Data Metalcraft's Motion to Dismiss, contends that limited facts exist that suggest that Data Metalcraft may be subject to the jurisdiction of this Court. Heartstation asserts that Data Metalcraft sells the allegedly infringing storage devices to eight corporations, including Survivalink, a Minnesota corporation, and other "unnamed" corporations in other states. (Pltf's Resp. at 2). Heartstation states that Survivalink sells the devices over the Internet, and then alleges that SaraMed, a New York corporation, is likely another corporation who purchases the devices from Data Metalcraft and then sells the devices over the Internet. (Pltf. Resp. at 3). Heartstation concludes that it is unable to determine whether the other corporations Data Metalcraft does business with actually sell the devices over the Internet or in Illinois; it seeks the opportunity to conduct further discovery to determine whether these corporations do just that. (Pltf. Resp. at 3, 5).

## DISCUSSION

**Standard of Review**

In patent infringement cases, Federal Circuit law is controlling, even in determining the question of whether to exercise personal jurisdiction over out-of-state defendants. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). However, deference is given to the state's highest court in determining whether a defendant is amenable to process in the forum state. *LSI Indus. Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). In order to survive a motion to dismiss for lack of personal jurisdiction, plaintiffs carry the burden of establishing a prima facie case of personal jurisdiction over the defendants. *Euromarket Designs, Inc. v. Crate*

3

& *Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000). When deciding whether the plaintiff has made the necessary showing, a court can look to the affidavits and exhibits submitted by each party. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

A court may exercise personal jurisdiction over a defendant where the defendant has sufficient minimum contacts with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The minimum contacts can establish two types of jurisdiction: general or specific. The defendant is subject to general jurisdiction when it is either domiciled in the forum state, *see Euromarket Designs*, 96 F. Supp. 2d at 833, or "when the defendant maintains 'continuous' and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus.*, 232 F.3d at 1375, citing *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Specific jurisdiction "arises out of" or "relates to" the cause of action even if the defendant's contacts with the forum state have been "isolated and sporadic." *Id.* "Random," "fortuitous," or "attenuated" contacts, however, will not substantiate a finding of minimum contacts between a forum state and an out-of-state defendant. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).

### A. GENERAL PERSONAL JURISDICTION

A defendant domiciled in a forum state or who has activities that are "substantial" or "continuous and systematic" is subject to the general jurisdiction of that state, *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 46 U.S. 408, 414-15 (1984). The Court sees no contacts between Data Metalcraft and Illinois that could potentially be considered substantial, continuous, or systematic. Heartstation asserts that Data Metalcraft sells its allegedly infringing devices to

4

Survivalink, a Minnesota corporation, who then sells the devices in a continuous manner on an interactive website. Though Heartstation makes its case for general jurisdiction by asserting that marketing a product through a distributor who has agreed to serve as a distributor in a forum state subjects a defendant to personal jurisdiction in that state, (Pltf. Resp. at 3, citing *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987)), Heartstation concedes that Data Metalcraft is only subject to the personal jurisdiction of this Court if there was a distribution agreement between Data Metalcraft and Survivalink specifically directed at distribution to Illinois consumers. This would not automatically create personal jurisdiction, as Heartstation suggests. Rather, such an agreement would qualify as "additional conduct indicating an intent or purpose to serve the market in the forum state." *Asahi Metal*, 480 U.S. at 112. However, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* Heartstation has not presented any factual basis evidencing a distribution agreement between Data Metalcraft and Survivalink that directs purposeful commercial activities at Illinois; thus, the possibility that one of the allegedly infringing devices has made its way to Illinois does not tie Data Metalcraft to the jurisdiction of this Court.

### B. SPECIFIC PERSONAL JURISDICTION

To determine whether specific personal jurisdiction exists, the Court must determine whether the defendant has "purposefully established minimum contacts within the forum state" and whether those contacts would make an assertion of personal jurisdiction fair and reasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The defendant must have "purposefully availed" itself of the privilege of conducting activities within

5

the forum state, thus invoking the benefits and protections of its laws such that they should "reasonably anticipate being haled into court there." *Asahi Metal*, 480 U.S. at 109. In federal cases, the plaintiff must satisfy two elements for specific jurisdiction: (1) the plaintiff must show that the defendant is amenable to service of process; and (2) the plaintiff must establish that haling the defendant into court is consistent with the Fifth Amendment's due process clause. *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 734 (N.D. Ill. 1999) (citing *United States v. De Ortiz*, 910 F. 2d 376, 381-82 (7th Cir. 1990). Amenability to service is governed by Illinois' long-arm statute.

### 1. Amenability to Service

Under the first prong of the specific personal jurisdiction test, the plaintiff must demonstrate that the defendant is amenable to process in the forum state under the state's long-arm statute. *LSI Indus. Inc., v. Hubbell Lighting*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). In Illinois, the long-arm statute extends to the limit allowed by the federal due process requirements; if the contacts between the defendants and Illinois are sufficient to satisfy the requirements of both the Illinois long-arm statute and the United States Constitution have been met, then no other inquiry is necessary. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). Count one of Heartstation's complaint set forth a claim for patent infringement under 35 U.S.C. § 251 et seq and other relevant provisions of the United States patent laws. No state claims are asserted. Because 35 U.S.C. § 251 does not provide for service of process, Defendant's amenability to service is governed by Illinois' long-arm statute, 735 Ill. Comp. Stat. Ann. 5/2-209(a)(1992).

Under the Illinois long-arm statute, a court may exercise jurisdiction over nonresident

defendants, "as to any cause of action arising from the doing of any such act [as]:

> (1) the transaction of any business within this State;

> (2) the commission of a tortious act within this State;

> * * *

735 ILCS 5/2-209(a)(1992).

The Illinois long-arm statute further states: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c)(1992). Finally, where jurisdiction is predicated on subsection (a), only a cause of action arising from the enumerated acts may be asserted against a nonresident defendant, and each cause of action alleged must independently arise from one of the enumerated acts. 735 ILCS 5/2-209(f)(1992); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F. 2d 276, 279 (7th Cir. 1990).

The Seventh Circuit has held that the Illinois long-arm statute is coextensive with federal due process requirements; if the contracts between the defendants and Illinois are sufficient to satisfy the requirement of due process, then the requirements of both the Illinois long-arm statute the United States Constitution have been met, and no other inquiry is necessary. *Klump v. Duffus*, 71 F. 3d 1368, 1371 (7th Cir. 1995). Therefore, if jurisdiction is improper under the Illinois or United States Constitution, then this Court cannot exercise jurisdiction over the Defendant. *See RAR*, 107 F. 3d at 1276.

### 2. Federal Due Process

The Federal Circuit has applied a three-factor test to determine whether specific jurisdiction over a non-resident defendant satisfies the due process requirements of the

7

Fourteenth Amendment: (1) whether the defendant "purposefully directed" its activities at the residents of the forum; (2) whether the claim "arises out of or relates to" to defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995). Like the Seventh Circuit, the Federal Circuit applies the minimum contacts standard of *International Shoe v. Washington,* 326 U.S. at 310 (1945).

### a. Purposeful Availment

The first *Akro* consideration is whether a defendant purposefully availed itself of the forum state such that the defendant "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum." *Akro*, 45 F.3d at 1545, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The purpose of this Due Process inquiry is to prevent a party's subjection to the binding judgments of a forum with which it has "no meaningful contacts, ties, or relations." *Id.*

It is clear to this Court that Data Metalcraft did not purposefully avail itself of the benefits of conducting business in the State of Illinois. As outlined in the affidavit of its President, Data Metalcraft does not have any offices, agents, or assets in Illinois, nor do they sell or advertise to Illinois citizens, nor do they even maintain a website through which their devices could be sold directly to Illinois residents. Data Metalcraft does not appear to have in any way sought the benefits and protections of Illinois law by the virtue of doing business here, as Data Metalcraft does not *do* business in Illinois. There are no facts suggesting any activity by Data Metalcraft that would evidence or even imply the random and fortuitous contacts with Illinois that would be necessary in order for this Court to exercise specific personal jurisdiction over this defendant.

8

Heartstation desperately cites to *Central States v. Reimer Express World Corp.*, 230 F.3d

934 (Fed. Cir. 2000) for support, arguing that this Court should allow Heartstation to conduct

further discovery before dismissing Data Metalcraft from the lawsuit. Heartstation, however,

digs its own grave by offering this case as the sole support for their contention. While

Heartstation correctly cites language from *Central States* that "the plaintiff must establish a

colorable or prima facie showing of personal jurisdiction before discovery should be permitted,"

230 F.3d at 946, Heartstation cannot and does not sustain such a burden. Rather, Heartstation

asks for permission to conduct discovery that it claims it has been "unable" to do, in an attempt

to reach the prima facie showing retroactively. Heartstation fails to point to even one fact that

firmly establishes even one Data Metalcraft contact with Illinois. Instead, Heartstation relies

upon conjecture and premature allegations, using terms such as "may be," "very likely," and

"presumably" in relation to Data Metalcraft's Illinois contacts.[1]

Unable to establish any sort of direct Data Metalcraft connection with Illinois,

Heartstation finds itself similarly unable to make an Illinois connection between Data Metalcraft

and the corporations it supplies parts to. It argues that Survivalink, which purchases 88% of Data

Metalcraft's devices, sells their products over the Internet, but cannot confirm the sale of even

one product in Illinois. (Pltf's Resp. at 3). Heartstation admits in their Response to Data

Metalcraft's Motion to Dismiss that "there are no facts regarding whether Survivalink or any of

---

[1] Heartstation makes the following assertions in its Response to Data Metalcraft's Motion to Dismiss: "It is *very likely* that Survivalink has sold these devices to an Illinois hospital, corporation, or governmental [sic] agency" (Pltf. Resp. at 4); "[w]hile Heartstation has not been able to conduct discovery on this issue, *presumably* Survivalink has sold some of these devices to individuals or corporations located in Illinois" (Pltf. Resp. at 3); "Survivalink purchases 88% of the allegedly infringing devices that Data Metalcraft sells...a fact that suggests that Survivalink *may be* Data Metalcraft's sales agent" (Pltf. Resp. at 3).

the other seven corporations [who purchase devices from Data Metalcraft] serve as Data Metalcraft's sales agent in Illinois." (Pltf's Resp. at 2). It appears to this Court that Heartstation has not even conducted the minimal investigation required to bring a complaint against Data Metalcraft in the Northern District of Illinois in good faith.

Further, Heartstation cites to *East-West Trading v. NTI Group*, 2001 WL 1914456 *1 (N.D. Ill. Sept. 24, 2001), for support. Heartstation asserts that this short memorandum opinion denies a defendant's motion to dismiss for lack of personal jurisdiction in a patent infringement case when discovery has not been conducted and when plaintiff had not had the opportunity to test in a deposition the affidavit upon which the motions were based. (*Pltf's Resp.* at 6). This Court's reading of the case, however, notes serious factual differences between *East-West* and the instant case, along with an incorrect characterization of the *East-West* holding. According to the brief facts presented in *East-West*, the misguided defendant seeking to have itself dismissed for lack of personal jurisdiction tried three times to move for dismissal: first, it relied on the wrong statutes and did not file an affidavit; then, it moved again, but again without any affidavit. *Id.* The defendant eventually managed to file an affidavit, but when the Court considered whether to allow the affidavit upon challenge by the plaintiff, it noted that it would do so if the defendant could produce the affiant for a deposition. *Id.* The defendant was unable to procure such a deposition, and thus, due to the lengthy delay in resolving this issue, the Court denied the motion to dismiss, stating, "We will not consider a late affidavit when plaintiff has been denied the opportunity to test its veracity." *Id.*

When determining whether the plaintiff had made a prima facie showing, factual disputes are resolved in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. The Univ. of Toronto*

10

*Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). All Heartstation had to do in order to

challenge the statements in O'Brien's affidavits would be to submit its own affidavit with

opposing facts; then Heartstation's facts would be taken as true over those of Data Metalcraft.

Unfortunately for Heartstation, the only affidavit it could offer was that of a Heartstation

company secretary, who came to a legal conclusion she is not in the position to make, and who

offered nothing to contradict any of the statements made by O'Brien on behalf of Data

Metalcraft.[2] It is unclear to this Court why the affidavit was provided, but it is crystal clear that

it provides no support to any of Heartstation's contentions that this Court may exercise personal

jurisdiction over Data Metalcraft.

### b. Arising Out of Forum-Related Activities

The second consideration from *Akro* is whether the plaintiff's claim of infringement

arises out of or relates to the defendant's purposeful activities within the forum. *Akro*, 45 F.3d at

1547. As the Court has determined from the facts known to it at this time, Data Metalcraft did

not engage in purposeful activities within Illinois; thus, it is immaterial whether Heartstation's

---

[2] The affidavit of Lori Kolder, offered by Heartstation, reads as follows:

"I, Lori Kolder, upon being sworn, hereby depose and state:

1. I am a secretary with Heartstation Inc. In approximately March of 2002 I obtained a defibrillator storage device from SaraMed, and the documentation regarding this transaction is attached hereto.
2. I am familiar with the defibrillator storage device that is the subject of Heartstation's patent at issue in this case. I have examined the defibrillator storage device obtained from SaraMed, and I have compared to the defibrillator storage device that is the subject of Heartstation's patent at issue in this case.
3. Based upon my examination of these two devices, it is my opinion that the defibrillator storage device obtained from Saramed infringes Heartstation's patent.

/S/ Lori Kolder (Pltf's Resp., Exh. B).

claim arises out of or relates to Data Metalcraft's apparently non-existent Illinois activities.

### c. Reasonableness

The final consideration for the Court is whether the exercise of personal jurisdiction would be reasonable and fair in light of the facts of the case. *Akro*, 45 F.3d at 1545. Given that Data Metalcraft has attested to numerous facts showing that they do not have any contacts with Illinois, and given that Heartstation has not presented any facts to the contrary, it is certainly unreasonable and contrary to standards of fairness to subject Data Metalcraft to the jurisdiction of this Court.

## CONCLUSION

Data Metalcraft's motion to dismiss [#5] the complaint is hereby granted pursuant to Fed. R. Civ. P. 12(b)(6). Data Metalcraft is dismissed as a defendant in this lawsuit.

SO ORDERED

ENTERED: 4/3/03

HON. RONALD A. GUZMÁN
United States Judge